George L. Johnston v. Commissioner.
Johnston v. Commissioner
Docket No. 14971.
United States Tax Court
1949 Tax Ct. Memo LEXIS 257; 8 T.C.M. (CCH) 198; T.C.M. (RIA) 49048; February 25, 1949
*257 Upon the record it is found that no partnership existed between petitioner and his wife in the operation of a business of installation and repair of refrigeration equipment prior to July 1, 1944, and it is held that the partnership created on that date under a former partnership agreement may not be recognized for tax purposes, as the wife rendered no vital or essential service to the partnership after that date and her contribution to its capital was represented by a one-half interest in her husband's business conveyed to her by him as a gift on that date. Held, that the evidence is insufficient to establish that items claimed by petitioner as deductions representing business expenses are allowable in excess of the amount allowed by respondent in determining the deficiencies. Contributions by petitioner to his church in the three taxable years determined in amount and held to represent deductible charitable contributions. Ralph W. Barbier, Esq., Penobscot Bldg., Detroit, Mich., for the petitioner. A. J. Friedman, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: The respondent has determined deficiencies in income *258 and victory tax for the calendar year 1943 of $3,156.70, and a deficiency in income tax for the calendar year 1944 in the amount of $11,848.81. The petitioner claims overpayments of income and victory tax for 1943 of $15,552.75, and income tax for 1944 of $8,200.13. The determination of the correct income of the petitioner for the calendar year 1942 is necessary by reason of the application of the Current Tax Payment Act. The issues are the correctness of respondent's action in (a) the inclusion in petitioner's income for the years 1942, 1943 and 1944 of all of the net income of Johnston Refrigeration Construction, upon the ground that in those years this business was not a bona fide partnership between petitioner and his wife, recognizable for income tax purposes; (b) the disallowance for the three respective years in question of deductions of $1,669.30, $2,337.18 and $1,327.61, as sales promotion expenses; and (c) the disallowance of deductions by petitioner in the three years in question of $914, $1,339.20 and $1,539 as contributions to charities. A fourth issue was conceded by petitioner. The parties have filed an original and a supplemental stipulation of facts which are included *259 in our findings of fact by reference. Other facts not stipulated were established by testimony introduced and exhibits filed at the hearing. Findings of Fact The petitioner, George L. Johnston, and his wife, Bernadette M. Johnston, are residents of Detroit, Michigan. They were married in 1931 and have two children, born June 24, 1934 and January 6, 1936, respectively. The petitioner's returns for the taxable years in question were filed with the collector of internal revenue for the District of Michigan. At the time of her marriage, Mrs. Johnston was employed by the Kelvinator Corporation, the particular organization being known at that time as the Dalrymple-Kelvinator Sales Corporation, whose business was that of manufacturing, selling, installing and servicing of refrigerators. Mrs. Johnston was first employed by Kelvinator in 1926, when she was 19 years of age, her work being that of a clerk, checking on orders, answering the telephone and billing and typing invoices for material and iabor. In the course of this work she became familiar with the various parts and materials used in the installation and repair of refrigeration equipment. While employed by Kelvinator, she met *260 the petitioner who was employed by the same company as foreman in charge of a crew of men who installed and serviced refrigerators. Mrs. Johnston continued in her work with Kelvinator for about one year after she was married. At the time she resigned her position she was receiving a salary of $165 per month. After resigning she stayed at home and was occupied as a housewife. The petitioner remained with Kelvinator until October 30, 1937, when the Company released him because of poor business conditions. He was then given one month's salary in addition to his regular pay check. This payment amounted to approximately $300. Mrs. Johnston had no money or other property of her own. She had saved some small amount from the "grocery money" which the petitioner had given her. At the time petitioner was released by Kelvinator he was recognized as an exceptionally capable man in personally performing services as well as directing others in the installation and repair of refrigeration equipment. He then decided that it was preferable not to obtain employment as a mechanic but to go into business for himself. As his funds were insufficient to carry out this purpose, he accepted temporary *261 employment with one Hudson, who was in the business of installing and servicing refrigeration equipment in beer parlors. This work had to be done at night after closing hours. Petitioner continued to work as an employee of Hudson until the Spring of 1938. For some months prior to this time he and his wife had discussed the organization of a separate business, and on November 29, 1937, petitioner had executed and acknowledged a certificate of conducting business under the assumed name of Johnston Refrigeration Construction. This certificate was executed by the petitioner alone and gave his name as the individual owning and conducting the business. After petitioner left the employ of Hudson he continued to do work for the latter, but on a contract basis. Petitioner's wife had encouraged him to organize the separate business, and busied herself actively in its organization and operation. She solicited customers and during the day took charge of the small place of business which had been rented. Her work there consisted of answering the telephone, keeping the records, ordering supplies and handling matters with the salesmen of the companies supplying needed materials. In addition to *262 this, as petitioner's work was largely done at night after business hours, she would drive him from one job to another during the night, and would sleep in the car while he was performing his work. After completion of one job she would drive him to his next assignment while he slept in the car and thus obtained some rest. Shortly after the organization of the business, when it was in need of funds for the purchase of material, petitioner's wife borrowed at one time $300 and at another time something in excess of $700 from her mother. These advances by the mother were repaid her by the business. Petitioner's work increased rapidly and before the end of the first year he hired one full-time employee. By 1941 petitioner had in his employ approximately 11 men, but in that year he entered into a contract with Kelvinator under which Johnston Refrigeration Construction became the authorized service agency of that company for Detroit and vicinity. With the execution of this contract Kelvinator discontinued its service department, and petitioner took over that work entirely. As a result the number of his employees increased to over 40. The contract with Kelvinator was in writing and was *263 signed by petitioner alone. In 1941 the business of Johnston Refrigeration Construction was well organized and operating smoothly. Supervisors for service men and for installation men were employed as well as a man in charge of parts, and a considerable office force. In 1942 the general office affairs were turned over to one Smith, an office manager. Petitioner's wife continued to devote her attention to the business until about the middle of 1943. She then discontinued her regular work at the office although she went there occasionally. She continued to discuss with petitioner various matters in connection with the business. When employed fulltime in the operation of the business, she had had her sister or mother take charge of her children. At times she employed a housekeeper. Later she put the children in boarding school. In May 1944 Johnston Refrigeration Construction opened a branch office in Royal Oak, Michigan, a suburb of Detroit. This was due to the fact that the business was receiving an increasing number of service calls from that territory and it was felt that the business could operate more efficiently from a branch office there. Petitioner's wife opened this branch *264 office and operated it alone. This operation continued until about the end of 1944. The business of Johnston Refrigeration Construction continued to be registered as the sole proprietorship of petitioner until July 1, 1944, on which date the petitioner executed and acknowledged "Certificate of Discontinuance of Business Under an Assumed Name." This certificate witnessed the fact that the business theretofore conducted under the assumed name of Johnston Refrigeration Construction by George L. Johnston was discontinued. On the same date the petitioner and his wife executed and acknowledge a Certificate of Copartnership and filed it with the County Clerk of Wayne County, Michigan, on the same day. This certificate stated that "we now intend to carry on a business, in the City of Detroit, State of Michigan, as Co-partners under the firm name and style of JOHNSTON REFRIGERATION CONSTRUCTION." It further certified that the names of the persons composing said partnership were George L. Johnston and Bernadette M. Johnston. On July 1, 1944, petitioner and his wife executed an agreement of copartnership witnessing the agreement "to become co-partners together under the firm and partnership *265 name of JOHNSTON REFRIGERATION CONSTRUCTION in the business of electrical refrigeration repair, installation and construction the said partnership to commence on the 1st day of July, A.D. 1944 and to continue for thirty (30) years thereafter." This contract stated that the petitioner contributed to the partnership one half of all of the assets of every kind and character "used by George L. Johnston in his business known as Johnston Refrigeration Construction," and that Bernadette M. Johnston contributed one half of all of the property "used by George L. Johnston in his business known as Johnston Refrigeration Construction." By this contract each one of the partners was entitled to one half of the earnings of the business and salaries were provided for petitioner of $75 per week and his wife of $25 per week. On July 1, 1944, the petitioner executed a document purporting to assign to himself and his wife the lease on the premises occupied by the company, which lease ran to himself individually. On the same date petitioner and his wife executed a "bill of sale" in which they, as sellers, purported to sell to themselves, as partners, all right, title and interest in the business known *266 as Johnston Refrigeration Construction. On March 5, 1945, petitioner filed a gift tax return acknowledging that he, as donor, had made a gift of the value of $25,188.13 to his wife, represented by a one-half interest in all of the assets of "his business known as Johnston Refrigeration Construction." On the same date petitioner's wife signed a donee's information return acknowledging the receipt of a gift of the value of $25,188.13 on July 1, 1944, from petitioner. Prior to July 1, 1944, the date of the execution of the partnership contract, the petitioner reported in his income tax return for each year all of the income of Johnston Refrigeration Construction as his individual income. In his return for the year 1944, petitioner reported that he was in receipt of net income in the amount of $37,831.35. For that year he, for the first time, executed and filed a partnership return of income on behalf of Johnston Refrigeration Construction, which return was for the taxable period commencing July 1, 1944 and ending December 31, 1944, the net income for that period being in the sum of $25,693.71. This return stated that of this amount the petitioner received $13,496.85 and Bernadette M. *267 Johnston received $12,196.86. The depreciation schedule attached to this partnership return set out a deduction for depreciation by the partnership for the period beginning July 1, 1944 and ending December 31, 1944. In his personal income tax return for the taxable year 1944, petitioner reported all of the income derived from Johnston Refrigeration Construction for the period January 1, 1944 to July 1, 1944, and took a deduction for the depreciation of the property of the business for the same period. In addition he included in his income the sum of $13,496.85, which was stated to represent his distributive share of the partnership income from July 1 to December 31, 1944. Petitioner, in his individual income tax return for the calendar year 1943, reported all of the net income of the business. He and his wife made and filed a joint return of income for the calendar year 1942, but nothing in that return indicated that any part of the income from the business was that of petitioner's wife. Prior to the filing of the joint return for 1942, no return was filed by petitioner's wife for any of the years during which the business of Johnston Refrigeration Construction was in existence. *268 The business of Johnston Refrigeration Construction continued to operate in the same general manner after July 1, 1944, as it had before that date. The number of employees increased to 47 in July 1944 and to 57 in July 1945. Following the execution, on July 1, 1944, of the partnership contract, petitioner's wife drew $25 a week from the business. Before that date she had drawn nothing. The books and records of the company were changed July 1, 1944, to reflect for the first time a capital interest by petitioner's wife in the business. The books of the business prior to July 1, 1944, contain a record of the capital account of the petitioner, only, and record the entire surplus of the business, in the sum of $38,376.27, in that account of petitioner's. In determining the deficiency, respondent disallowed for the three respective years here in question the sums of $1,669.30, $2,337.18, and $1,327.61, which had been taken as deductions for those years as business expense incurred and paid by the business. These amounts were disallowed by respondent for lack of substantiation and for the further reason that the specific items were not shown to comprise ordinary and necessary business *269 expense. The parties, however, have filed a supplemental stipulation in which the respondent concedes as allowable deductions as business expense $414.79 for 1942, $455.56 for 1943, and $676.80 for 1944. By this stipulation the petitioner concedes that items in the sum $30of for 1942, $26.16 for 1943, and $13.74 for 1944 were properly disallowed by respondent. Substantially all of the balance of the amount disallowed as sales and promotion expense represents amounts of cash which petitioner withdrew from his business in weekly amounts of $22.50 in 1942, $32 in 1943, and $35 in 1944. The petitioner kept no record whatsoever of how or to whom he disbursed these weekly drawings, but testifies that these sums were used for the entertainment of customers for business purposes. Petitioner became a member of the First Church of Christ Scientist in 1939. In 1942 he made cash contributions to this church at service of $15 per week, or a total of $780. For the calendar year 1943 he made contributions to this church each Sunday for eight weeks at the rate of $17 per week and for 44 weeks at the rate of $22 each Sunday, or a total of $1,104. For the calendar year 1944 petitioner contributed *270 to this church $22 per week for four weeks and $27 per week for 48 weeks, or a total of $1,384. Opinion The petition here alleges the existence of an equal partnership between petitioner and his wife dating from the beginning of activities of Johnston Refrigeration Construction. The claim for overpayment of tax for the three years involved is made upon the ground that petitioner mistakenly included all of the income of the business in his personal returns for the periods prior to July 1, 1944, whereas only half of the income was his during those periods and the other half was the income of his wife. Under the circumstances here, we think that petitioner must sustain that contention to successfully attack even the deficiency for the calendar year 1944. As to whether or not a partnership existed between petitioner and his wife from the inception of the business, the only evidence tending to show a partnership understanding is the testimony of these two individuals. It is quite true that the record establishes that from the beginning until the middle of 1943, services were rendered by petitioner's wife which were vitally necessary and without which the business could not have been *271 established and built up. The fact alone, however, does not establish an understanding between petitioner and his wife that the business was being carried on in equal partnership. It is not unusual for a wife to contribute valuable and necessary services to her husband's business with no understanding that she should have any personal interest therein. Attention is called by petitioner's counsel to two advances of cash secured by petitioner's wife from her mother in the early days of the business to provide funds needed for the purchase of materials. This is characterized by counsel as an investment of these funds in the business by petitioner's wife. The facts disclosed by the record do not know this sum to have been invested in the business but merely to have been loaned to and repaid by it. There is no evidence that these advances were ever recorded as capital investments, and the fact that they were repaid to petitioner's mother by the business shows them to have been merely loans representing in each instance an indebtedness on the part of the business. On careful consideration of the facts established by the record, it is impossible for us to reconcile the statement of petitioner *272 and his wife that they had a complete understanding that they were doing business in an equal partnership during all of the years, with the many facts established which negative such understanding. It is inconceivable to us that petitioner, a man of intelligence, would in his individual income tax return report all of the income from the business as his, individually, that he would file a certificate under the Fictitious Names Act, setting himself forth as the sole proprietor of the business, and then execute on July 1, 1944, after the business had been in operation for some years, a contract of partnership with his wife and transfer to her one half of the property which he and she now claim was already vested in her. Moreover, petitioner on July 1, 1944, also cancelled the certificate for doing business as a sole proprietorship, and he and his wife then executed a new certificate evidencing the carrying on of the business in partnership commencing on that date. Petitioner and his wife are evidently a devoted couple. He has recognized the fact that he is greatly indebted to her for the services performed during the early years of the business. It is probably true that he looked on *273 all of his property, including the assets of the business, as being as much hers as his, in the sense that she was welcome to any part or all at any time there was need on her part. That condition, however, would not support a finding that the business was intended to be and was operated as a legal partnership for income tax purposes between petitioner and his wife. If the income here in question were inconsiderable we would see how, even though one half of it constituted income to the wife, it might be reported by the husband, either through inadvertence or knowingly, by reason of the fact that there was little, if any, resulting income tax. The income involved here, however, is in large amounts and petitioner is a business man. For 1943 the income from the business reported by petitioner was in excess of $40,000. This was reported as his individual income, and taxes paid thereon, although he now contends that he and his wife were aware of the fact that half of this income was not his but hers. In the following year petitioner reports all of the income from the business until July 1, as his individual income. July 1 was the date of the execution of the partnership agreement. Petitioner *274 returned one half of the income realized for the balance of that year. His wife reports for that year only one half of the income from July 1 to the close of the year. Under these conditions we think the testimony of petitioner and his wife does not sustain their contention. The action of respondent in disregarding the existence of a partnership between petitioner and his wife for the taxable years involved and taxing all of the income of the business to petitioner is approved. See ; . Petitioner, during the three taxable years here involved, drew certain amounts weekly in cash for use for sales promotion purposes. The same amount was drawn each week in advance. The withdrawals were not made as reimbursement for expenditures made the prior week but merely to meet his estimate of what he might be required to expend during the coming week. It would be absolutely impossible for his expenditures for this purpose to be the same exact amount for each week during the year. He kept no record whatsoever of the parties to whom the payment of these funds were made or the purpose of the individual *275 payment. The funds were presumably mingled with other personal funds in his pocket and such expenditures as he found necessary for taking a customer to lunch or to a ball game were paid out of his pocket. Under these conditions, with no record kept, there is no way in which we can determine whether these withdrawals were spent for the purposes indicated or were in fact ordinary and necessary expenses of carrying on business. The failure to maintain a record of these expenditures is that of the petitioner. Respondent has conceded items in a substantial amount. The evidence is insufficient for us to determine any amount in excess of that allowed by respondent as representing deductible expenses. Another condition exists, however, with respect to the items disallowed by respondent representing cash contributions by petitioner to his church. The record shows that petitioner is a member of the First Church of Christ Scientist, in which no pledges to contribute are made by members. The income of the church arises from cash contributions made by the members at services, without prior pledge. Petitioner has testified that he contributed in regular and fixed amounts each Sunday for the *276 three years, these weekly contributions increasing from year to year as the prosperity of his business increased. We think that the making of these contributions has been sufficiently established. We have, therefore, found the amount thereof in each year. These amounts should be allowed as deductions upon the recomputation of the deficiencies. One additional issue raised by the petition has been conceded by the petitioner. Decision will be entered under Rule 50.